IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

TONIA THOMPSON,

        Plaintiff,

vs.                                    Case No. 10-2625-SAC

EXIDE TECHNOLOGIES,

        Defendant.

MEMORANDUM AND ORDER

This case comes before the Court on Defendant's motion for summary judgment, and its related motion to strike portions of the Plaintiff's declaration submitted in support of her response.

Plaintiff's original charge filed with the EEOC alleged discrimination based only on race. Plaintiff amended that charge to allege sexual discrimination, disability discrimination, and retaliation, as well. Plaintiff abandoned her disability discrimination claim during discovery, and abandoned her race discrimination claim in response to the summary judgment motion. *See* Dk. 46, p. 7, n 1. Accordingly, only Plaintiff's claims of sex discrimination and retaliation remain. Plaintiff contends that she was subject to a sexually hostile work environment, that her termination from employment was based on her gender, and that her termination was in retaliation for her reporting of sexual harassment. Defendant generally denies that Plaintiff suffered a hostile work environment, denies that Plaintiff

reported such harassment to it, and asserts that plaintiff was terminated for her violation of its workplace violence policy and not for any protected conduct.

**Summary judgment standard**

A court grants a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure if a genuine issue of material fact does not exist and if the movant is entitled to judgment as a matter of law. The court is to determine "whether there is the need for a trial-whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will … preclude summary judgment." *Id*. There are no genuine issues for trial if the record taken as a whole would not persuade a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

To counter a "properly made" motion, the non-movant must "set out specific facts showing a genuine issue for trial" by way of admissible evidence in compliance with Rule 56(e)(1). A party faced with a summary judgment motion may not simply rest on allegations contained in the pleadings, but must come forward with admissible evidence establishing each fact he relies upon. *BancOklahoma Mort. Corp. v. Capital Title Co.*, 194

2

F.3d 1089, 1097 (10th Cir. 1999). Our local rule requires those facts to be "presented by affidavit, declaration under penalty of perjury," or other stated discovery. D.Kan. 56.1(d). Affidavits and declarations must be made on personal knowledge and shall set forth such facts as would be admissible in evidence. *Id; See* Fed.R.Civ.P. 56(c)(4). Defendant contends that portions of Plaintiff's declaration are inadmissible, so fail to meet the requirements of the rules.

**Motion to strike**

Defendant has moved to strike portions of Plaintiff's declaration filed in support of her summary judgment response, contending that certain paragraphs state legal conclusions, misstate the record, add new allegations, and contradict her prior deposition testimony, so are inadmissible. The Court has carefully examined Plaintiff's declaration in light of Defendant's objections, Plaintiff's response to this motion, and Plaintiff's deposition. The Court agrees that portions of Plaintiff's declaration consist of legal conclusions, and has disregarded those. Similarly, the Court has disregarded the portions of Plaintiff's declaration which state how the sexual harassment made her feel, as those portions are immaterial to the issues currently before the Court. But the relevant portions of Plaintiff's declaration, which state the conduct she believes constitutes sexual harassment and to whom she reported it, have not been shown materially contradict her deposition so as to create a sham issue of fact. Rather, they involve mere matters of

characterization or interpretation, such as whether reporting "five" instances of sexual harassment is materially different than reporting "many" instances of it.

Under the governing rules, "an affidavit may not be disregarded [solely] because it conflicts with the affiant's prior sworn statements." *Law Co., Inc. v. Mohawk Const. and Supply Co., Inc.*, 577 F.3d 1164, 1169 (10th Cir. 2009), *citing Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986) (citation omitted). Instead, the Tenth Circuit "explicitly require[s] that a district court first determine whether the conflicting affidavit is simply an attempt to create a 'sham fact issue' before excluding it from summary judgment consideration." *Law Co.,* 577 F.3d at 1169 (internal citations and quotations omitted). Because Defendant has failed to show that the challenged portions of Plaintiff's declaration are attempts to create a sham fact issue or issues, Defendant's motion to strike shall be denied. The Court therefore incorporates the relevant facts below.

**Uncontested facts**

For purposes of this motion, viewing the facts in the light most favorable to the Plaintiff, and not judging credibility, the Court finds the following facts to be uncontested.

Plaintiff, an African-American female, was hired by Defendant on January 31, 2005, and worked until her termination on May 18, 2010. Sometime during 2006, Plaintiff complained to Defendant's H.R. Manager

that she had been subjected to a racial slur from her co-worker, Mr. Clark. Defendant promptly investigated the matter, terminated Mr. Clark, and informed Plaintiff that he had been disciplined. At the time, the H.R. Manager reemphasized Defendant's anti-harassment policies and told Plaintiff that she needed to let her know if anyone gave her any problems.

One or two years after Mr. Clark's termination, Plaintiff asked to change from the third shift to the second shift. When David Jones, the Manufacturing Manager, asked Plaintiff why she wanted to change shifts, she told him one of the reasons was "the harassment that [she] had been going through." As an example of that harassment, Plaintiff told Mr. Jones about an incident with two women in the bathroom, and did not relate to him any incident she believes to be sexual harassment. Mr. Jones told Plaintiff's new supervisor, Mr. Boggs, that Plaintiff was being moved to his shift because Plaintiff was being harassed on third shift. Mr. Jones did not indicate that Plaintiff was being sexually harassed, so Mr. Boggs believed that Plaintiff's complaints of harassment were not related to her sex.

Plaintiff includes the following among the incidents which she alleges constitute sexual harassment:

1) being called a "black bitch" by supervisors Scrutchfield and Jeffers;

2) being repeatedly asked by her supervisor, Lopez, to kiss him even after she refused on multiple occasions;

3) being asked out on a date by her supervisor, Lopez, repeatedly,

even after she continuously refused;

4) being yelled at and embarrassed by her supervisor, Lopez;

5) having a different supervisor, Chad Scrutchfield, stand by her machine and stare at her in a lewd manner throughout her shift;

6) being followed through the building after her shift by supervisors Scrutchfield and Jeffers;

7) having a co-worker, Randy, make comments about her butt and breasts and other comments of a sexual nature, such as he knows she has "good stuff" in a sexual and lewd manner;

8) having another co-worker, Darrell, ask her out repeatedly on dates even after she refused him multiple times;

9) having Darrell show her sexually explicit text messages and photographs from other women, even after she asked him to stop;

10) having Darrell tell her that her "butt looked good in the uniform" and ask if she "wanted any pie;"

11) having a Hispanic co-worker whistle and yell things at her;

12) having this same Hispanic co-worker tell her that his cousins were coming in town and "were looking for somebody they could f***" and telling her that they would pay her;

13) having another coworker, R. Fowler,[1] ask her to "piss in his

---

[1]Supervisor Boggs was also aware that on one occasion, RaSean Fowler had approached plaintiff from behind, put his hands on her waist, and

6

mouth" and "to sit on his face", further, at one point he yanked on her leg to pull her to the floor, which shocked and scared her;

14) having Mr. Stinger[2] make lewd and lascivious comments to her, such as she "walked nasty";

15) having Mr. Stinger grab her breast at work less than two weeks before her termination;

16) having maintenance men group together, look at her, then say "mm, mm, mm" or "ooh" or make some gesture;

17) having male employees squeeze between her and the wall or her machine, rubbing up against her as they passed her work station.

Plaintiff did not report the incidents #1 - #4, or #12 to her supervisor or to anyone in management.[3] Plaintiff told her immediate supervisor, J. Boggs, about the incidents #5 - #16, except for #12. Mr Boggs personally witnessed #17 on repeated occasions. Plaintiff never reported any of the sexually harassing behavior to any management employee or supervisory employee other than her supervisor, Mr. Boggs. Plaintiff complained to Mr.

---

picked her up off the floor, causing plaintiff to protest. Nothing was done about that incident. Supervisor Boggs also volunteered that Maurice Stinger had a history of making sexually explicit or derogatory comments to women. Boggs depo. p. 62.

[2]Plaintiff spells this name "Stinger," so the Court will do the same, although Defendant spells this name "Stringer."

[3]Plaintiff believes that Defendant terminated supervisor Lopez for sexual harassment, apparently based on complaints from other employees.

Boggs about the breast-grabbing incident on the day it occurred, but told him not to report it because she intended to report it herself to the H.R. Manager, Dan Lange.[4] Mr. Boggs did not report the incident to anyone.

Mr. Boggs also testified that Plaintiff told him at work that Darrell and Dwayne were trying to get her into bed. Mr. Boggs reported some of these incidents to the Manufacturing Manger, David Jones, but without reference to specific facts. For example, instead of reporting that Darrell and Dwayne (two employees from other work areas) were trying to get Plaintiff into bed, as Plaintiff had told him, he reported that Darrell and Dwayne were talking to Plaintiff and he asked them to leave the assembly area because they were disrupting the line by not letting Plaintiff focus on her job. Mr. Jones just looked at him and shrugged it off. No investigations were initiated into any of the matters that Plaintiff reported to Mr. Boggs.

Plaintiff testified that she intended to tell Defendant's Human Resources Manager, Dan Lange, about the acts of harassment, but never did so, in part because it was the first job she had stayed at that long and that she really loved doing. Plaintiff did speak to Mr. Lange the day of the breast-grabbing incident but did not tell him about it. Instead, she told him that she had kept a log of complaints, but when he asked her what kind of complaints, she did not suggest that they involved sexual harassment, and

---

[4]This is a different H.R. Manager than the one who had received Plaintiff's complaint in 2006.

mentioned only an issue relating to overtime.

On Friday, May 7, 2010, Plaintiff was involved in a shouting altercation with a female co-worker, Ms. Cerna, while on the floor during their work shift. Plaintiff believed that Ms. Cerna told her to "f*** you" twice. After their shift ended, Plaintiff waited for Ms. Cerna in the women's locker room. Plaintiff approached Ms. Cerna to ask about what she had said to Plaintiff on the floor. Ms. Cerna then pushed her hand into Plaintiff's chest. The argument escalated. When Ms. Cerna suggested that they go see their supervisor, Plaintiff refused. Ms. Cerna then stated that they should "take it outside."

The following Monday, Ms. Cerna reported the altercation to Human Resources. H.R. Manager Lange promptly conducted an investigation of the incident by interviewing Plaintiff, Ms. Cerna, and all other witnesses. Plaintiff told management that Ms. Cerna put her hand on Plaintiff's chest and that Plaintiff threw Ms. Cerna's hand off of her and yelled at her not to touch her. Plaintiff told management that Ms. Cerna suggested taking their issue to the supervisor but Plaintiff said no. Ms. Cerna told management that Plaintiff appeared to be upset about how Ms. Cerna treated her while they were on the floor and immediately began loudly yelling at her when she entered the locker room. Ms. Cerna said that she tried to get away from the situation, but Plaintiff kept following her and trying to force her to engage.

On May 12, 2010, Mr. Lange told Ms. Cerna that she was being

9

suspended for the incident with Plaintiff. Ms. Cerna admitted putting her hands on Plaintiff and suggesting that they take it outside. Mr. Lange informed her that these were considered threats and were not tolerated. That same day, Mr. Lange informed Plaintiff that she was being suspended because after the altercation during their shift on the work floor, Plaintiff continued to escalate and incite the conflict with Ms. Cerna.

Following her suspension, Plaintiff called the Vice President of Human Resources, Dan Keefe, because she wanted to discuss the reason for her suspension. Plaintiff told Mr. Keefe her version of what happened with Ms. Cerna, but does not remember if she told him about any other complaints.

On May 18, 2010, Defendant terminated Ms. Cerna for her role in the incident with Plaintiff. Ms. Cerna was informed that she was being terminated because she touched Plaintiff in the locker room and asked her to take it outside. That same day, Defendant also terminated Plaintiff for the stated reason of her violation of "company policy." *See* Doc. 43, Exh.P, EX001478. Both parties understand this to be the Defendant's Workplace Violence Policy. The decision to terminate Ms. Cerna's and Plaintiff's employment was made by Kevin Smith (the Plant Manager), Dan Lange (the H.R. Manager), Defendant's corporate counsel, and Defendant's Human Resources department.

**Hostile work environment**

Ordinarily, the Court would begin by examining Defendant's contention

that the alleged acts of harassment are insufficiently severe or pervasive to constitute illegal sexual harassment. But given the circumstances of this case, which involve harassing acts both by supervisors and by coworkers, the Court finds it more appropriate to first examine Defendant's assertion that even if illegal sexual harassment occurred, Defendant cannot be held liable for it.

### Employer liability for supervisor harassment

In contending that it cannot be liable even if a sexually hostile work environment existed, Defendant does not address the negligence theory, but addresses only vicarious liability, asserting the *Faragher/Ellerth defense*. That defense applies when the harassers are supervisors, but is irrelevant when the harassers are co-workers. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998); *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 765 (1998); *Chapman v. Carmike Cinemas*, 307 Fed.Appx. 164, 169, 2009 WL 57504, 4 (10th Cir. 2009) ("*Ellerth* and *Faragher* established an affirmative defense for employers who would otherwise be subject to respondeat superior liability for harassment by a supervisor.") This affirmative defense is not available where a plaintiff can demonstrate that the supervisor's behavior "culminate[d] in a tangible employment action" against the plaintiff (*e.g.*, discharge, demotion, or undesirable reassignment), because the employer is vicariously liable for the supervisor's behavior. *Ellerth*, 524 U.S. at 765. The record does not show that the

harassing acts of any of Defendant's supervisors resulted in any official tangible employment action against the Plaintiff. Accordingly, this affirmative defense is potentially available to Defendant as to the alleged harassment undertaken by its supervisors. *See Pinkerton v. Colo. Dep't of Transp.*, 563 F.3d 1052, 1059 (10th Cir. 2009).

An employer bears the burden to establish two elements, to succeed in making this defense.

> "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Faragher*, 524 U.S. at 807, 118 S.Ct. 2275; *Ellerth*, 524 U.S. at 765, 118 S.Ct. 2257.

*Helm v. Kansas*, 656 F.3d 1277, 1285 (10th Cir. 2011).

The Court first examines whether the Defendant exercised reasonable care to prevent any sexually harassing behavior by its supervisors. The record reflects that when Plaintiff was hired, she signed an acknowledgment that she had read Defendant's Employee Handbook. That Handbook includes an Anti-Harassment Policy which defines and proscribes harassment, and imposes a duty to report on employees who believe they are being harassed. The policy permits employees to report to one of several listed persons, or to call any other member of management with whom the employee would feel comfortable, or to call the Loss Line, stating:

> Any employee who believes that he/she has been subjected to harassment or believes that he/she has knowledge of harassment is

12

required to immediately report the incident to the following people:

. Their Supervisor or Manager
. Any member of the Management at the facility
. The Director of Employee Relations

. Any member of Management, who receives a report or complaint regarding harassment, must immediately inform the Corporate Human Resources Department …

Doc. 43, Exh. B, at EX 000229-230. Defendant posted the Loss Line number on posters and hung them on a wall in a common area where all employees had access to them. Defendant also required its employees to undergo harassment training, which Plaintiff completed. And Defendant placed posters on its bulletin boards regarding its anti-harassment policies, stating what an employee should do to stop harassment. Thus the record shows that Defendant's actions as a whole establish a reasonable mechanism for prevention of sexually harassing behavior. *See Helm*, 656 F.3d at 1290.

The Court next examines whether Defendant acted reasonably to correct the supervisors' sexual harassment.

> …in order "to establish that it took proper action to correct harassment, [the defendant] was required to show that it acted reasonably promptly on [plaintiff's] complaint when it was given proper notice of her allegations as required under its complaint procedures." *Frederick*, 246 F.3d at 1314. "The most significant immediate measure an employer can take in response to a sexual harassment complaint is to launch a prompt investigation to determine whether the complaint is justified." *Swenson v. Potter*, 271 F.3d 1184, 1192 (9th Cir. 2001); *see also Cerros*, 398 F.3d at 954 ("Our cases recognize prompt investigation of the alleged misconduct as a hallmark of reasonable corrective action.").

*Helm*, 656 F.3d at 1290.

13

It is uncontested that Defendant did not initiate an investigation into the acts of supervisors Lopez, Scrutchfield, or Jeffers. But Plaintiff admits that she never reported the sexual harassing acts of supervisor Lopez to anyone. The record confirms that she was made aware of how to report harassing acts, not only by having read the Employee Handbook when she was first hired, but also by posters in the common areas and by the harassment training she attended. The record also demonstrates that Plaintiff had successfully used Defendant's complaint procedure in 2006, when she reported a racial slur from a co-worker, which incident Defendant promptly investigated and remedied. Because Plaintiff unreasonably failed to take advantage of the corrective opportunities provided by the Defendant, Defendant cannot be held liable for any of supervisor Lopez's acts.

Plaintiff did, however, report the harassing acts of the two other supervisors. Soon after she moved to second shift, Plaintiff told her supervisor, Mr. Boggs, that supervisor Scrutchfield stood by her machine and stared at her in a lewd manner throughout her shift, and that supervisors Scrutchfield and Jeffers followed her through the building. Leering at someone, although boorish and immature, falls short of the kind of conduct necessary to support a hostile work environment claim. Following someone around is not necessarily done because of one's sex, and does not approach the severe or pervasive conduct required for sexual harassment claims. The Court thus finds that the acts of these two supervisors, even

14

viewed collectively, fail to constitute severe and pervasive sexual harassment. To the extent that the supervisors' acts may actually have been more egregious than Plaintiff reported to Mr. Boggs, her notice to Defendant of the sexually harassing conduct was insufficient to trigger Defendant's duty to take prompt corrective action.

### Employer liability for coworker harassment

The remainder of Plaintiff's allegations concern acts by coworkers. The only potential basis for Defendant's liability for these acts is its negligence in allowing its employees to engage in sexual harassment. *See Scarberry v. Exxonmobil Oil Corp.*, 328 F.3d 1255, 1257 (10th Cir. 2003); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 673 (10th Cir. 1998). Contrary to Defendant's belief, *see* Doc. 43, p. 23, this is precisely the theory Plaintiff states in the pretrial order. *See* Doc. 37, p. 4, 5.a (contending that plaintiff properly complained about the unwelcome sexual harassment, but defendant failed to remedy it.)

Under this theory of liability, plaintiff "must establish that the employer had actual or constructive knowledge of the hostile work environment but did not adequately respond to notice of the harassment." *Adler*, 144 F.3d at 673.

> Employers are not automatically liable for harassment perpetrated by their employees. *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 72, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). In order to prevail on a negligence-based hostile work environment claim, [the plaintiff] "bears the burden of establishing that the employer's conduct was

15

unreasonable." *Wilson v. Tulsa Junior College*, 164 F.3d 534, 541 n. 4 (10th Cir. 1998). He must prove that [the employer] was itself negligent because "it knew or should have known about the conduct and failed to stop it." *Burlington Indust., Inc. v. Ellerth*, 524 U.S. 742, 759, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). Thus, the focus is not on whether the employer is liable for the bad acts of others, but whether the employer itself is responsible for failing to intervene.

*Hollins v. Delta Airlines*, 238 F.3d 1255, 1258 (10th Cir. 2001). "The negligence analysis can be divided into two separate inquiries, looking first, into the employer's actual or constructive knowledge of harassment, and second, into the adequacy of the employer's remedial and preventative responses." *Turnbull v. Topeka State Hosp.*, 255 F.3d 1238, 1244 (10th Cir. 2001) (quotation omitted), *cert. denied*, 535 U.S. 970 (2002).

Plaintiff asserts only actual knowledge. "Actual knowledge is usually demonstrable where the plaintiff has reported harassment to management-level employees." *Harsco Corp. v. Renner*, 475 F.3d 1179, 1188 (10th Cir. 2007). *See E.E.O.C. v. PVNF, L.L.C.* 487 F.3d 790, 799 (10th Cir. 2007). But to say that reports to a management-level employee are sufficient to put the employer on notice is not to say that reports to such persons are necessary to put the employer on notice. The issue here is whether Plaintiff's reports to her supervisor are sufficient.

It is uncontested that Plaintiff reported certain acts of sexual harassment only to her supervisor, Mr. Boggs. The facts do not reveal whether Mr. Boggs was an upper-level manager whose knowledge is sufficient to bind the company under agency principles. Nor do the parties

16

address whether reporting harassment to a lower-level supervisor constitutes sufficient notice to the employer under negligence principles. But the Tenth Circuit generally requires notice merely to "management," in this context, without distinguishing among the different tiers of management. *Hirschfeld v. New Mexico Corrections Department*, 916 F.2d 572, 577 (10th Cir. 1990) ("Employer negligence in this context is defined as "failing to remedy or prevent a hostile or offensive work environment of which management-level employees knew, or in the exercise of reasonable care should have known."), *quoting EEOC v. Hacienda Hotel*, 881 F.2d 1504, 1516 (9th Cir. 1989).

And the Tenth Circuit held in *Adler* that reporting harassment to a "low-level supervisor," who has some authority over the Plaintiff and others, is sufficient to constitute actual notice to a "management-level employee," triggering the employer's duty to respond to sexual harassment reports. 144 F.3d at 674. *Adler* cited the EEOC guidelines, which state:

> With respect to conduct between fellow employees, an employer is responsible for acts of sexual harassment in the workplace where the employer (or its agents or supervisory employees) knows or should have known of the conduct, unless it can show that it took immediate and appropriate corrective action.

29 C.F.R. § 1604.11(d) (1989).

Defendant's sexual harassment policy requires employees to immediately report harassing incidents to: their Supervisor or Manager; any member of the Management at the facility; or the Director of Employee

17

Relations. Doc. 43, Exh. B at EX000229-230. "Any member of Management, who receives a report or complaint regarding harassment, must immediately inform the Corporate Human Resources Department …" *Id.* Where, as here, the employer's sexual harassment policy includes "supervisors" among the persons authorized to receive reports of harassment, complaints to one's supervisor are sufficient to put the company on notice of the harassment. *See e.g., Young v. Bayer Corp.*, 123 F.3d 672, 674 (7th Cir. 1997) (holding that employee's complaint about sexual harassment to the department head, in accordance with employer's internal policies, constituted notice to employer); *Wixted v. DHL Airways, Inc.*, 1998 WL 164922, *8 (N.D. Ill. 1998) (finding plaintiff's complaints to her supervisor sufficient to put the company on notice of sexual harassment, even though the supervisor, apparently heeding her wishes, did not report the conduct to anyone else.)

Accordingly, there are genuine issues of material fact in dispute concerning whether the Defendant had actual knowledge of the sexual harassment. Defendant does not assert that it responded to Plaintiff's complaints to Mr. Boggs in any manner, thus no corrective action was taken in response to Plaintiff's complaints to him.

### Severe and pervasive

Defendant first contends that the incidents alleged by plaintiff, spread over the course of her five-year employment, are insufficiently specific, severe, and pervasive to constitute a sexual hostile work environment. *See*

18

*Faragher*, 524 U.S. at 788 (noting that Title VII is not a "general civility code" and stating that "sporadic use of abusive language, gender-related jokes, and occasional teasing" are among "the ordinary tribulations of the workplace" (quotations omitted)).

> To establish [that] a sexually hostile work environment existed, a plaintiff must prove the following elements: (1) she is a member of a protected group; (2) she was subject to unwelcome harassment; (3) the harassment was based on sex; and (4) [due to the harassment's severity or pervasiveness], the harassment altered a term, condition, or privilege of the plaintiff's employment and created an abusive working environment.

*Dick v. Phone Directories Co., Inc.*, 397 F.3d 1256, 1262-63 (10th Cir. 2005). Only the fourth element is argued by the parties.[5]

Actionable sexual harassment includes not only "economic or tangible discrimination" but also "discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citation and internal quotation marks omitted). Under *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57 (1986), "for sexual harassment to be actionable, it must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an

---

[5]Defendant does not argue that Plaintiff did not subjectively perceive her work environment as hostile or abusive, so the Court does not address that element. Defendant summarily contends that Plaintiff did not present evidence that the alleged harassment was due to her gender, but the facts are sufficient to raise a material question of fact on that issue, except as otherwise noted in this memorandum.

abusive working environment." *Smith v. NW Fin. Acceptance, Inc.*, 129 F.3d 1408, 1412 (10th Cir. 1997) (internal quotation marks omitted) (brackets omitted).  Factors to consider include the frequency of the conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Harris*, 510 U.S. at 23. To meet this standard, the plaintiff must show: 1)that a reasonable person would find the work environment hostile or abusive; and 2) that she subjectively perceived the work environment to be hostile or abusive. *Smith*, 129 F.3d at 1413 (citing *Harris*, 510 U.S. at 21–22).

The Court finds that the facts stated by Plaintiff, viewed collectively and in the light most favorable to her, could reasonably support a finding that Plaintiff's work environment was altered due to severe or pervasive sexual harassment.[6] Plaintiff's evidence recites numerous instances of crude jokes and innuendos, sexually-motivated inquiries, comments, gestures, touchings, and grabbing her breast, which may constitute a sexual battery sufficient by itself to demonstrate severity. *See Chapman v. Carmike Cinemas*, 307 Fed.Appx. 164 (10th Cir. 2009), *citing Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1072 (10th Cir. 1998) (holding that a single incident of physically threatening and humiliating conduct can be sufficient to create a

---

[6]This is true even if the Court omits the acts of Plaintiff's supervisors and considers only the acts of her coworkers.

hostile work environment for a sexual harassment claim). Although a jury may find some assertions too lacking in specificity to be credible, at this stage, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge...." *Anderson*, 477 U.S. at 255. Plaintiff's admissible evidence "is to be believed, and all justifiable inferences are to be drawn in [that party's] favor." *Id.*; *MacKenzie v. City and County of Denver*, 414 F.3d 1266, 1273 (10th Cir. 2005). This Court finds the totality of the evidence to be sufficiently particular to meet Plaintiff's burden of raising a material question of fact on this issue. Summary judgment is thus not warranted on Plaintiff's sexual harassment claims based on the acts of her coworkers.

**Retaliation**

Plaintiff contends that her termination was in retaliation for her protected conduct. Plaintiff first contends that her protected conduct was her reporting to Mr. Lange that she had a log of complaints. But Plaintiff admits that she never showed Mr. Lange that log or told him that they related to sexual harassment. Instead, when he asked her what kind of complaints, she referred only to an overtime issue. While a plaintiff need not use "magic words" in describing the objectionable conduct, she must still convey her concern that the offender is engaging in a practice prohibited by the employment statutes. *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1203 (10th Cir. 2008). Because Plaintiff failed to do so, she did not give Mr.

21

Lange sufficient notice that she was concerned with unlawful sexual harassment. Thus her reporting of a "log of complaints" is not protected conduct.

Plaintiff next contends that her termination was in retaliation for her reporting to her supervisor, Mr. Boggs, that co-employee Stinger had grabbed her breast at work. Plaintiff complained to Mr. Boggs about that incident on the day it occurred, but told him not to report it because she intended to do so herself to the H.R. Manager, Mr. Lange. Plaintiff did not report it to Mr. Lange or anyone other than Mr. Boggs. She was terminated less than two weeks later.

### Plaintiff's prima facie case

Plaintiff relies on the three-part framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to prove retaliation indirectly.

> Under the *McDonnell Douglas*/indirect approach, the plaintiff must first make out a prima facie case of retaliation by showing "(1) that [s]he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1212 (10th Cir. 2008) (internal quotation marks omitted). If the plaintiff establishes a prima facie case, the employer must then offer a legitimate, nonretaliatory reason for its decision. *Id.* at 1211. Finally, once the employer has satisfied this burden of production, the plaintiff must show that the employer's reason is merely a pretext for retaliation. *Id.*

*Twigg v. Hawker Beechcraft Corp.*,___ F.3d __, 2011 WL 4838937, *8 (10th Cir. Oct. 13, 2011). Under this approach, plaintiff has the ultimate burden to

show that the employer's reason is unworthy of belief.

Plaintiff contends that the facts establish a prima facie case because her complaint to her supervisor constitutes protected conduct, her termination was materially adverse action by Defendant, and the intervening two-week interval between those two events is close enough in time to raise an inference of causation. Ordinarily, the Court would agree. *See Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1171-72 (10th Cir. 2006) (holding evidence that termination occurred no more than six weeks after employer knew employee intended to engage in protected activity was "very closely connected in time" and thus sufficient to establish causation (internal quotation omitted)).

But here, any inference of causation is refuted by lack of evidence that any of the relevant decision makers knew of Plaintiff's protected conduct. For a plaintiff "[t]o establish the requisite causal connection between his protected conduct and termination, . . . [he] must show that . . . [the employer] was motivated to terminate his employment by a desire to retaliate for his protected activity." *Hinds v. Sprint/United Management Co.*, 523 F.3d 1187, 1203 (10th Cir. 2008). "[I]t is apparent that protected activity cannot bear a causal relationship to adverse action if those taking the action were unaware of the existence of the protected action..." *Shinwari v. Raytheon Aircraft Co.*, 215 F.3d 1337, 2000 WL 731782, 6 (10th Cir. 2000), *overruled on other grounds*, *Crumpacker v. Kansas Dept. of Human*

*Resources*, 338 F.3d 1163 (10th Cir. 2003). Plaintiff must "come forward with evidence from which a reasonable factfinder could conclude that those who decided to fire [her] had knowledge of [her] protected activity. *See Montes*, 497 F.3d at 1176." *Hinds v. Sprint/United Management Co.*, 523 F.3d 1187, 1203, 523 F.3d 1187 (10th Cir. 2008). Proximity between the protected activity and the alleged retaliatory act is meaningless unless those who caused the alleged retaliatory act to occur are shown to be aware of that protected activity. *See Hysten v. Burlington Northern and Santa Fe Ry. Co.*, 296 F.3d 1177, 1184 (10th Cir. 2002).

It is undisputed that the decision to terminate the Plaintiff's employment was made by Kevin Smith (the Plant Manager), Dan Lange (the H.R. Manager), Defendant's corporate counsel, and Defendant's human resources department. Mr. Boggs, the sole employee shown to have had any knowledge of the Stinger incident prior to Plaintiff's termination, was not among the decision-makers. No evidence suggests that any decision maker had any knowledge of Plaintiff's complaint about Mr. Stinger's act. Under these facts, summary judgment is warranted because no prima facie case of retaliation can be made.[7]

**Termination**

---

[7]Even assuming the existence of a prima facie case of retaliation, summary judgment is warranted for Plaintiff's failure to establish pretext, for the same reasons stated in the termination discussion, which follows.

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." 42 U.S.C. § 2000e-2(a)(1). The precise articulation of the prima facie case "depend[s] on the context of the claim and the nature of the adverse employment action alleged," *Plotke v. White*, 405 F.3d 1092, 1099 (2005). Generally, a prima facie case of disparate treatment has three essential elements: Plaintiff must show that (1) she "belongs to a protected class;" (2) she "suffered an adverse employment action;" and (3) "the challenged action took place under circumstances giving rise to an inference of discrimination." *E.E.O.C. v. PVNF, Inc.*, 487 F.3d 790, 800 (10th Cir. 2007).

The parties address only the third element. Plaintiff alleges that an inference of sex discrimination arises from Defendant's preferential treatment of similarly-situated male employees, because male employees who engaged in similar or more violent workplace conduct than she did were not terminated. Plaintiff contends that a reasonable jury could infer discrimination because she did not engage in any violent behavior at work, yet male employees who engaged in similar or worse workplace conduct were not terminated.

For the treatment of another employee to be evidence of discrimination, the other employee must have been similarly situated, which means that "they deal[t] with the same supervisor, [we]re subjected to the

same standards governing performance evaluation and discipline, and

[were] engaged in conduct of comparable seriousness." *E.E.O.C. v. PVNF,*

*L.L.C.*, 487 F.3d 790, 801 (10th Cir. 2007) (internal quotation marks

omitted).

Defendant asserts that Plaintiff lacks personal knowledge of other

incidents, but Plaintiff shows the Court an admission by Mr. Boggs, her

supervisor, that he was aware of a physical altercation in the workplace

when Mike Bergan and Jaime, whose last name he did not recall, "got into a

shoving match in the break room and Mike wanted to take it outside." The

incident was reported to their first shift supervisor (not Mr. Boggs), who told

them to knock it off and get back to work. No discipline resulted from that

incident. Dk. 46, Exh.C, p. 101. That incident is sufficient to raise a jury

question whether male employees engaged in conduct of comparable

seriousness to Plaintiff's, yet were not terminated.

Plaintiff also shows that the two males were subjected to the same

standards governing performance evaluation and discipline as she was -

Defendant's Workplace Violence Policy. That policy defines violence as "an

intentional act to cause harm or injury to another person in the workplace;

or a threat in words or actions that creates the perception of intent to harm

a person." Doc. 43, Exh. F, at EX00025-27. Stated examples of prohibited

behavior include: "[m]aking threatening remarks or gestures" and

"[a]ggressive or hostile behavior that creates a reasonable fear of injury to

another person or is designed or intended to subject another to emotional distress." *Id.* The policy states that employees who violate this policy are subject to disciplinary action, up to and including termination. *Id.* The acts of the male employees, as related by Mr. Boggs, could reasonably be found to have violated Defendant's Workplace Violence Policy, subjecting them to discipline.

Nonetheless, the record fails to raise a genuine question of material fact as to whether Defendant enforced its Workplace Violence Policy disparately against females, warranting an inference of pretext. Because Plaintiffs' evidence fails to show that the two male employees noted above dealt with the same supervisor or decision maker as she did, they are not similarly situated to her. It was a first shift supervisor (not Mr. Boggs) who decided not to impose any discipline on the two male employees. That supervisor is not alleged to have taken part in the decision to terminate the Plaintiff for her workplace incident. None of the persons who made the decision to terminate the Plaintiff for her incident has been shown to have been a decision maker in any of the incidents of workplace violence Plaintiff seeks to compare. *See generally Block v. Kwal–Howells, Inc.*, 92 Fed.Appx. 657, 2004 WL 296976, at *3 (10th Cir. Feb.17, 2004) (employees are not similarly situated where they work for different departments, report to different supervisors and their positions entail different types of work).Thus the treatment of the noted male employees is not probative on the question

of whether Plaintiff was discriminated against based on her sex. No prima facie case has been made.

### Defendant's reason for termination

Even assuming, however, that Plaintiff's evidence is sufficient to make a prima facie case, Defendant has met its burden to offer a legitimate, non-discriminatory reason for its decision, in stating that Plaintiff was terminated for her violation of its Workplace Violence Policy. Defendant contends that it terminated plaintiff because she was admittedly involved in an argument with a co-worker which, in defendant's opinion, escalated to the point that it violated Defendant's policy against workplace violence. So Defendant terminated both employees involved in the incident. This reason is, on its face, legitimate and non-discriminatory, meeting defendant's "exceedingly light" burden of production, which involves no credibility assessment. *See Carter v. Pathfinder Energy Services, Inc.*, __ F.3d __ , 2011 WL 5222882 (10th Cir. Nov. 3, 2011). The burden thus shifts to the Plaintiff to show that this reason is merely a pretext for sex discrimination.

### Pretext

Plaintiff's burden is to "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000) (internal quotation marks omitted).

**Disparate treatment**

Plaintiff seeks to show pretext by asserting that she did not engage in any violent behavior, and that male employees who engage in physical altercations and arguments were not terminated. "[E]vidence that the defendant treated the plaintiff differently from others who were similarly situated ... is especially relevant to a showing of pretext." *Gossett v. Okla. ex rel. Bd. of Regents for Langston Univ.*, 245 F.3d 1172, 1177 (10th Cir. 2001).

But Plaintiff has not shown any inference of pretext from Defendant's treatment of similarly-situated employees. As discussed above, the facts show that some male employees engaged in physical altercations at work and remained employed, but because Plaintiff has failed to show that those employees were similarly situated to her, no question of fact regarding pretext arises. *See Metzler*, 464 F.3d at 1175–76 ("[W]e do not infer pretext from [an employer's] different treatment of [an employee] where the alleged different treatment was inflicted by different supervisors ... because any difference may be the result of [a] different supervisor's reactions."); *McGowan v. City of Eufala*, 472 F.3d 736, 745 (10th Cir. 2006)); *Rivera v. City and County of Denver*, 365 F.3d 912, 922 (10th Cir. 2004) ("Comparison of one disciplinary action with another ordinarily is relevant only to show the bias of the person who decided upon the disciplinary action."); *EEOC v. Flasher Co.*, 986 F.2d 1312, 1320 (10th Cir. 1992)

29

(citations omitted)( Differences in how different employees are treated "may be explained by the fact that discipline was administered by different supervisors...").

### Falsity of explanation

Plaintiff also contends that Defendant's explanation for her termination is false or unworthy of belief.

> A challenge of pretext … requires a court to look at the facts as they appear to the person making the decision to terminate, not the aggrieved employee." *Piercy v. Maketa*, 480 F.3d 1192, 1200 (10th Cir.2007) (internal quotation marks and brackets omitted). Thus, "[t]he relevant inquiry is not whether the employer's proffered reasons were wise, fair, or correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs." *Rivera v. City & Cnty. of Denver*, 365 F.3d 912, 924–25 (10th Cir. 2004).

*Sarkar v. McCallin*, 636 F.3d 572, 576 (10th Cir. 2011). Plaintiff offers no evidence indicating that Defendant's explanation for her termination was given disingenuously. No facts tend to show that Defendant did not honestly believe that the Plaintiff violated its policy, whose terms are broad enough to include the non-physical acts which Plaintiff admits having engaged in at work with Ms. Cerna, whom Defendant also terminated.

Viewing the record as a whole, the Court finds that Plaintiff has failed to produce enough evidence to raise a genuine dispute of material fact as to whether the stated reason for her firing was pretextual. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " *Matsushita,* 475 U.S.

at 587. *See Pinkerton v. Colorado Dept. of Transp.*, 563 F.3d 1052, 1058 (10th Cir. 2009). Summary judgment is therefore warranted on Plaintiff's claim of discriminatory termination.

IT IS THEREFORE ORDERED that Defendant's motion for summary judgment is granted in part and is denied in part in accordance with the terms of this memorandum. Only Plaintiff's claims of co-worker sexual harassment remain for trial.

Dated this 15th day of November, 2011.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge